IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DORETTA J. L., | ) |
| | ) |
|        **Plaintiff,** | ) |
| | ) |
| v. | )   Case No. 23-CV-334-MTS |
| | ) |
| MARTIN O'MALLEY,[1] | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
|        **Defendant.** | ) |

**OPINION AND ORDER**

Plaintiff Doretta J. L. requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") and asserts the Commissioner erred because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision denying benefits.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education,

---

[1] Effective December 20, 2023, pursuant to Fed. R. Civ. P. 25(d), Martin O'Malley, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920. Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.

At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work.

If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account her age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). A court's review is limited to two inquiries: first, whether the correct legal standards were

applied; and second, whether the decision was supported by substantial evidence. *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citation omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). A court, however, may not re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Even if a court might have reached a different conclusion, the Commissioner's decision will stand if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## Background and Procedural History

On October 11, 2021, Plaintiff filed an application for Title II disability insurance benefits (42 U.S.C. § 401, *et seq.*) under the Social Security Act. (R. 17). She alleged an inability to work beginning on September 16, 2021, due to limitations resulting from bipolar I disorder and anxiety disorder. (R. 17, 208). Plaintiff was fifty-nine years old at the time of the ALJ's decision. (R. 29, 205). She completed four or more years of college and has past relevant work as a preschool teacher. (R. 29, 208-09).

Plaintiff's application was denied both initially and upon reconsideration. (R. 17, 82-85, 92-95). At Plaintiff's request, ALJ Deirdre Dexter conducted an administrative hearing on December 19, 2022. The hearing was conducted by video pursuant to COVID-19 procedures. (R.

17, 36-66). ALJ Dexter issued a decision on January 10, 2023, denying benefits and finding Plaintiff not disabled. (R. 17-30). Plaintiff sought review by the Appeals Council, which it denied on June 7, 2023. (R. 1-6). As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

Following the five-step sequential process, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since September 16, 2021, the alleged onset date. (R. 19). At step two, she found Plaintiff suffered from severe impairments of bipolar disorder and anxiety disorder. (R. 20). The ALJ determined at step three that Plaintiff's impairments did not meet or equal a listed impairment. (R. 20-21). Based upon her consideration of Plaintiff's subjective allegations, the medical evidence, and the medical source opinion evidence, the ALJ concluded Plaintiff retained "the [RFC] to perform a full range of work at all exertional levels" with the following additional limitations:

> [Claimant is] able to understand, remember and perform simple and detailed tasks with routine supervision, sustain attention and concentration for up to two hours at a time with routine breaks when performing simple and detailed tasks, and able to sustain the mental demands associated with performing simple and detailed tasks throughout an ordinary workday and workweek. She is able to interact with supervisors as needed to receive work instructions, occasionally interact with co-workers but the job should not involve teamwork in order to complete work tasks, but the job should not involve interacting with the public. She is able to perform a low stress job, meaning a job that does not involve hourly production quotas or work performed at a rapid production-rate pace and the job should involve no more than ordinary and routine changes to work setting or work duties.

(R. 21-22).

At step four, the ALJ determined Plaintiff had past relevant work as a preschool teacher. (R. 29). After consultation with a vocational expert ("VE"), the ALJ concluded at step five that Plaintiff could perform the representative jobs of change house attendant, cart attendant, and

hospital cleaner, all of which she found existed in significant numbers in the national economy. (R. 29-30, 62-64). As a result, the ALJ found Plaintiff had not been under a disability from September 16, 2021, through the date of the decision. (R. 30).

## Errors Alleged for Review

Plaintiff raises one general allegation of error, which includes several arguments, in her challenge to the Commissioner's denial of benefits on appeal. (*See* Docket No. 6 at 4) ("The ALJ failed to properly assess the medical source and nonmedical reports/opinions."). She contends: (1) the ALJ failed to properly evaluate the persuasiveness of the medical opinions provided by nurse practitioner, Kimberly Oman (Mulanax), APRN-CNP ("Ms. Oman"), and supervising physician Maria Arquisola, M.D.; (2) the ALJ erred by finding Plaintiff's physical impairments non-severe; (3) the ALJ had no evidence to rely upon when determining Plaintiff's mental RFC; and (4) the ALJ improperly considered the third-party function report completed by Plaintiff's husband. (Docket No. 6 at 4-10). For purposes of clarity, the Court addresses Plaintiff's arguments in the order set forth below.

## Consideration of Plaintiff's Physical Impairments

Plaintiff asserts the ALJ erred by finding the state agency physicians' prior administrative findings that her chronic kidney disease was a non-severe impairment persuasive because the physicians rendered their opinions prior to Plaintiff's hospitalizations and emergency room visits. (Docket No. 6 at 8). She also argues there is evidence which supports that her kidney disease is a severe impairment, including her blood creatinine levels and her Glomerular Filtration Rate ("GFR"), which the "agency [physicians] and ALJ just missed." *Id*. Defendant responds that the ALJ properly evaluated the prior administrative findings, and he asserts that because Plaintiff's

non-severe physical impairment did not result in any functional limitations, the ALJ was not required to include related limitations in the RFC. (Docket No. 12 at 13-15).

At step two, Plaintiff bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).[2] An impairment which warrants disability benefits is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). It also "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. The severity determination for an alleged impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience." *Williams*, 844 F.2d at 750.

The burden of showing a severe impairment is "de minimis," yet "the mere presence of a condition is not sufficient to make a step-two [severity] showing." *Flaherty v. Astrue*, 515 F.3d 1067, 1070-71 (10th Cir. 2007), quoting *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003). An ALJ "must consider the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Langley v. Barnhart*, 373 F.3d 1116, 1123-24 (10th Cir. 2004) (quotation omitted). If the claimant is unable to make a "de minimus" showing of medical severity, then the disability determination process ends, and she is determined not disabled. *Williams*, 844 F.2d at 751.

---

[2] Basic work activities are defined as the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522. Examples of basic work activities include: "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." Soc. Sec. Rul. 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985).

In the step-two analysis, the ALJ specifically addressed Plaintiff's chronic kidney disease. When determining the impairment was non-severe, she recounted the evidence that Plaintiff attempted to stop taking Lithium for her mental condition, but she restarted the medication when her condition worsened. (R. 20, 25-26). Relying upon treatment records from her nephrologist from March of 2021 and July of 2022, which included creatinine and GFR levels referenced by Plaintiff, the ALJ determined Plaintiff's kidney disease was not severe and did not result in any functional limitations. (R. 20, 344-57, 620-26). Moreover, even if the ALJ committed error at step two, it is harmless, as she found Plaintiff had other severe impairments and proceeded through the additional steps of the sequential evaluation process. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error [at step two] became harmless when the ALJ reached the proper conclusion that [the claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

Additionally, to the extent the ALJ found the prior administrative findings persuasive, she provided support for doing so. She relied upon Plaintiff's normal physical exams, a creatinine level of 1.09 from November of 2021, Plaintiff's reported daily activities (wherein she did not assert any physical limitations), and lab results showing a creatinine level of 1.10 from July of 2022. (R. 27, 49, 68-69, 76, 221-28, 623). Although Plaintiff's emergency room visits and inpatient hospitalizations occurred after the findings of the state agency physicians, the record reveals the referenced treatment related to Plaintiff's mental impairments. (R. 447-502, 576-77, 603-12, 614-18). Moreover, Plaintiff has failed to explain how such evidence relates to a physical impairment and/or physical limitations. In any event, the ALJ discussed this evidence when determining Plaintiff's RFC. (R. 25-26).

Here, the ALJ found Plaintiff's chronic kidney disease was a non-severe impairment and did not result in any functional limitations in the RFC. The ALJ noted Plaintiff's disability function report that her ability to work was limited by her mental conditions of bipolar disorder and anxiety. (R. 22, 208). Even though Plaintiff was diagnosed with chronic kidney disease, her nephrologist did not report that Plaintiff had any functional limitations related to the condition. *See Madrid v. Astrue*, 243 Fed. Appx. 387, 392 (10th Cir. 2007) (the diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work). Moreover, there was no report or testimony by Plaintiff of any physical functional limitations (R. 36-66, 207-12), and Plaintiff points to no evidence in the record suggesting she suffers from such limitations. Thus, the Court finds no error by the ALJ.

### Consideration of the Mental Medical Source Evidence

Medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c, 416.920c. Under these rules, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must "articulate" in the decision how persuasive she finds each medical source's opinion by considering a list of factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors include: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The

most important factors are supportability and consistency, and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).[3]

The regulations explain that for supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). For consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

   1. *Ms. Oman's opinions*

Plaintiff first argues the ALJ failed to properly consider the opinions of Ms. Oman and supervising physician, Dr. Arquisola, which included an opinion for the Oklahoma Teachers' Retirement System in November of 2021 and a mental RFC assessment form in February of 2022. Plaintiff asserts the ALJ improperly rejected the opinions based upon an unreasonable interpretation of the evidence, primarily relying on Plaintiff's hospitalizations which occurred after the opinions were given. She also contends the ALJ imposed a "very selective" view of Plaintiff's daily activities when discounting the opinions. (Docket No. 6 at 4-8). Defendant responds that the ALJ's evaluation complied with the regulations and Plaintiff's arguments otherwise do nothing more than ask the Court to re-weigh the evidence. (Docket No. 12 at 8-12).

---

[3] Generally, the ALJ is not required to explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, if the ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ must explain how she considered the other factors. *Id.*, §§ 404.1520c(b)(3), 416.920c(b)(3).

9

In the decision, the ALJ specifically referenced the form completed by Ms. Oman on November 2, 2021, and seemingly approved by Dr. Arguisola, for the Oklahoma Teachers' Retirement System. (R. 28, 323). Plaintiff's diagnoses were listed as bipolar I disorder and anxiety disorder, and her prognosis was noted to be "fair to guarded," with exposure to increased stress possibly triggering mood cycling and impairing her insight and judgment. (R. 322-23). Ms. Oman summarized Plaintiff's treatment and mental condition, and she ultimately concluded Plaintiff's disability was permanent, as she was "permanently incapacitated for the performance of duties necessary for his/her job as assigned by his/her employer." (R. 323). The ALJ correctly discounted this opinion, finding it addressed "an issue reserved to the Commissioner." (R. 28); *see also* 20 C.F.R. § 404.1520b(c)(3)(i) (indicating statements from a medical source on issues "reserved to the Commissioner" are "inherently neither valuable nor persuasive" and stating that an ALJ is not required to provide "any analysis about how [she] considered such evidence . . . "). The Court finds no error by the ALJ in this regard.

Moreover, the ALJ considered the mental RFC assessment form completed by Ms. Oman in February of 2022. (R. 33, 413-15). In addition to several moderate limitations, Ms. Oman opined Plaintiff had marked limitations in her ability to understand, remember, and carry out detailed instructions and maintain attention and concentration for extended periods. (R. 413). She also determined Plaintiff had extreme limitations in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, the ability to respond appropriately to changes in the work setting, and the ability to set realistic goals or make plans independently of others. (R. 414). The ALJ noted Ms. Oman's comments on the evaluation, which included that Plaintiff struggled to adapt to changes in the work environment that caused

10

heightened anxiety making it difficult for Plaintiff to concentrate and follow through with daily tasks and that Plaintiff missed approximately 15-21 workdays per month. (R. 28, 414). She further referenced Ms. Oman's comment that Plaintiff "was comfortably and confidently teaching" until COVID-19, which required that Plaintiff "adapt to a completely new style of teaching." (R. 28, 415).

The ALJ provided the following explanation for finding Ms. Oman's opinion unpersuasive:

> I do not find this persuasive or supported by treatment records that show generally normal mental status exams (Exhibits 1F, 3F, 7F, 10F, 12F). It is inconsistent with [Plaintiff's] activities of daily living (Exhibit 4E and testimony) as well as her testimony that she had no problems adapting to change. Furthermore, Ms. Oman's statement that [Plaintiff] missed 15-20 workdays per month means she was essentially absent every single day since workdays in a month are about 20-23 and the only note in the record to support this is the statements from [Plaintiff] that she intentionally used her sick leave to keep from teaching at a new school until her grievance was decided. Additionally, Ms. Oman appears to blame COVID for [Plaintiff's] anxiety and her inability to adapt to virtual teaching rather than to a mental condition.

(R. 28).

The Court finds no error in the ALJ's evaluation of Ms. Oman's opinion from February of 2022. Contrary to Plaintiff's arguments, the ALJ's explanation is supported by the record and demonstrates she considered the consistency and supportability factors required by the regulations. The ALJ summarized Ms. Oman's treatment records in detail, which date from December of 2020 through October of 2022. (R. 24-27, 302-19, 330-41, 416-44, 512-51, 563-98). She identified several mental status examinations of Plaintiff, which had normal findings. (R. 24-27). The ALJ also acknowledged one-time examination findings of poor insight and judgment, reported hallucinations, and not being oriented to time, place, or situation from the time frame when Plaintiff was hospitalized. (R. 26). She noted, however, that Plaintiff's mental status examinations during that time period continued to show mostly normal findings. (R. 25-26). The ALJ further

relied upon Plaintiff's own testimony and other record evidence to demonstrate that Ms. Oman's comments regarding Plaintiff's ability to adapt and her propensity to miss work were unsupported. (R. 22-23, 45-46, 50-54, 222-26).

Moreover, to the extent Plaintiff challenges the ALJ's reliance upon her reported daily activities, other than making a general argument, Plaintiff fails to identify exactly what daily activities the ALJ improperly considered. In the reply, Plaintiff suggests her hospitalizations demonstrate her activities of daily living "were not standard for her." (Docket No. 13 at 2). However, the ALJ accounted for Plaintiff's hospitalizations when relying on Plaintiff's daily activities and formulating the RFC assessment. She summarized Plaintiff's responses on her function report (R. 22), Plaintiff's testimony from the hearing regarding her activities of daily living, which included testimony that she was hospitalized (R. 22-23), and the medical evidence of her hospitalizations (R. 25-26). The ALJ committed no error in this regard.

2. *The state agency psychologists' opinions*

Plaintiff also asserts the ALJ erred in evaluating the prior administrative findings of the state agency psychologists. She appears to challenge the ALJ's finding that the psychologists' opinions were supported by Plaintiff's daily activities, even though the ALJ ultimately concluded their determinations that Plaintiff's mental impairments were non-severe were unpersuasive. (Docket No. 6 at 8). Defendant responds that Plaintiff has failed to point to any specific activities relied upon by the ALJ, and the ALJ ultimately determined the opinions were unpersuasive and Plaintiff's mental impairments were "more limiting." (Docket No. 12 at 12-13).

The ALJ considered the opinions of the state agency psychologists, acknowledging their conclusions that Plaintiff's mental impairments were non-severe. (R. 27, 68-71, 76-79). She provided the following explanation for finding the opinions unpersuasive:

> I do not find this persuasive but it was supported by their limited review of the record noting [Plaintiff's] symptoms were well controlled, she stated her overall stress was improved since the legal aspects of her leaving her job has been resolved, and a full range of activities of daily living (Exhibits 1A/4 and 3A/5). The treatment records support a severe mental impairment that is controlled when [Plaintiff] is on Lithium and the moderate limitations opined by Ms. Oman, who has a long history of treating [Plaintiff], are consistent with a simple [RFC] assessment as described above.

(R. 27).

Here, the ALJ merely noted there was some support for the state agency psychologists' findings, relying in part on Plaintiff's daily activities. Ultimately, the ALJ found the opinions were unpersuasive because Plaintiff's treatment records supported the finding of a severe mental impairment resulting in limitations in the RFC. The Court agrees with Defendant that even if the ALJ failed to explain how Plaintiff could perform her daily activities, it constitutes harmless error because the ALJ ultimately determined Plaintiff was more limited than the state agency psychologists' opinions suggested. Thus, the Court finds no merit to Plaintiff's argument.

    3.    *The ALJ's mental RFC assessment*

Plaintiff further argues there was "no mental evidence to support the RFC[,]" as there was "no examiner's opinion" for the ALJ to rely upon "other than the disabling opinions of [Plaintiff's] treatment providers." (Docket No. 6 at 9). However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). It is "the ALJ, not a physician, [who] is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004); *see also* 20 C.F.R. § 404.1546(c) (providing that it is the ALJ's responsibility to assess RFC at the ALJ hearing level). Moreover, the Tenth Circuit Court of Appeals has rejected the argument "that an ALJ may not make an RFC

finding that differs from a physician's opinion unless the ALJ relies on a conflicting medical opinion." *Berumen v. Colvin*, 640 Fed. Appx. 763, 767 (10th Cir. 2016).

In this case, the ALJ outlined the record evidence in detail, including not only the medical source opinions, but also other relevant medical evidence, non-medical evidence, and Plaintiff's reports of her symptoms and functioning. (R. 21-29). Although she found the medical source opinions and prior administrative findings unpersuasive, the ALJ specifically explained why by referencing certain findings from Plaintiff's treatment records, reported daily activities, and hearing testimony. Thus, the ALJ identified record evidence to support her assessment of Plaintiff's mental RFC, and Plaintiff's argument is without merit. *See Young v. Barnhart*, 146 Fed. Appx. 952, 955 (10th Cir. 2005) ("The final responsibility for determining RFC rests with the Commissioner, based upon all the evidence in the record, not only the relevant medical evidence.").

### Consideration of Third-Party Function Report

Finally, Plaintiff argues the ALJ failed to appropriately consider the third-party function report completed by Plaintiff's husband, as she did not take into account that Plaintiff's husband completed the form prior to her "psychiatric hospitalizations" and "mental decompensations." (Docket No. 6 at 9). Defendant responds that the ALJ's consideration of the third-party function report followed the controlling regulations and that Plaintiff has not shown any error by the ALJ. (Docket No. 12 at 13).

The third-party function report completed by Plaintiff's husband constitutes evidence from a non-medical source. For claims filed after March 27, 2017, there is no specific articulation requirement and the ALJ is not required to apply the supportability and consistency factors (or the other factors) when considering such evidence. *See* 20 C.F.R. § 404.1520c(d) ("We are not

required to articulate how we considered evidence from nonmedical sources using the [medical opinion] requirements in paragraphs (a)-(c) in this section."). The ALJ, however, still must consider such evidence. *Id*. at § 404.1529(a) ("We will consider all of your statements about your symptoms, such as pain, and any description your medical sources or nonmedical sources may provide about how the symptoms affect your activities of daily living and your ability to work.").

The ALJ specifically referenced the third-party function report completed by Plaintiff's husband in the decision. (R. 28, 213-20). She acknowledged the regulations did not require she evaluate the report in the same manner required for medical opinions and prior administrative findings. (R. 28). In any event, the ALJ then considered the report, noting that "there appear [to be] mild examination findings, which are not consistent with the severity of symptoms and resulting functional limitation described by the claimant's husband (Exhibit 3E) and the claimant in this case." *Id*. This was all the ALJ was required to do. Plaintiff's arguments otherwise would require that this Court re-weigh the evidence, which it cannot do. *See Casias*, 933 F.2d at 800.

## Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

IT IS SO ORDERED this 31st day of May, 2024.

_____
MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT